

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. W. Cox
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-5523
Re: Applicability of Texas
Health Laws to inter-
state dining cars.

We have carefully considered the request contained in your letter of November 10, 1943, for the opinion of this department upon the following question:

"It has been brought to our attention that unsanitary conditions exist on dining cars operated within the State of Texas.

"However, it seems that these dining cars leave Houston, Texas, for New Orleans and then back through Austin, El Paso, and on out to California. I would like to know whether or not I have authority, under state law, to require compliance with the Texas Food and Drug Laws while these cars are in the State of Texas on such an interstate trip."

It is, of course, well settled that a state may as an incident to the exercise of its police power, legislate to protect the health of its citizens. Such state police regulations may also be brought to bear upon instrumentalities of interstate commerce, provided: (1) the Federal government has not entered the field and such state legislation does not conflict with superior Federal enactments; (2) such state legislation does not impose a direct burden on interstate commerce.

UNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. W. Cox, page 2

As to the first condition, we have searched the Federal Code and have found no national legislation regarding sanitary conditions on interstate dining cars. Nor have we discovered that Congress has conferred authority upon a branch of the executive arm of the Government to make regulations regarding the matter.

So far as the second condition is concerned, we believe such cases as N. Y. N. H. & H. R. R. v. N. Y., 165 U. S. 628, So. Ry. Co. v. King, 217 U. S. 524, and C. R. I. & P. Ry. Co. v. Arkansas, 219 U. S. 453, are in point.

In the N. Y. case a state statute regulating the heating of passenger cars while in New York State and specifically applying to interstate cars, was upheld. In the King case, the state statute relating to the speed of trains was applied to an interstate train and in the Arkansas case, State "full crew laws" were applied to interstate trains. None of these police regulations were held to burden interstate commerce. Indeed, in the New York case, we find the United State Supreme Court saying:

"* * * The statute in question had for its object to protect all persons travelling in the State of New York on passenger cars moved by the agency of steam against the perils attending a particular mode of heating such cars. There may be reason to doubt the efficacy of regulations of that kind. But that was a matter for the State to determine. We know from the face of the statute that it has a real, substantial relation to an object as to which the State is competent to legislate, namely, the personal security of those who are passengers on cars used within its limits. Why may not regulations to that end be made applicable, within a State, to the cars of railroad companies engaged in interstate commerce as well as to cars used wholly within such State? Persons travelling on interstate trains are as much entitled, while within a State, to the protection of that State, as those who travel on domestic trains. The statute in question is not directed against interstate commerce. Nor is it within the meaning of the Constitution a regulation of commerce, although it controls, in some degree, the conduct of those engaged in such commerce. So far as it may affect interstate commerce, it is to be regarded as legislation in aid of commerce and enacted under the power remaining with the State to regulate the relative rights and duties of all persons and corporations within its limits. Until displaced by

such national legislation as Congress may rightfully establish under its power to regulate commerce with foreign nations and among the several States, the validity of the statute, so far as the commerce clause of the Constitution of the United States is concerned, cannot be questioned.

"Counsel for the railroad suggests that a conflict between state regulations in respect of the heating of passenger cars used in interstate commerce would make safe and rapid transportation impossible; that to stop an express train on its trip from New York to Boston at the Connecticut line in order that passengers may leave the cars heated as required by New York, and get into other cars heated in a different mode in conformity with the laws of Connecticut, and then at the Massachusetts line to get into cars heated by still another mode as required by the laws of that Commonwealth, would be a hardship on travel that could not be endured. These possible inconveniences cannot affect the question of power in each State to make such reasonable regulations for the safety of passengers on interstate trains as in its judgment, all things considered, is appropriate and effective. Inconveniences of this character cannot be avoided so long as each State has plenary authority within its territorial limits to provide for the safety of the public, according to its own views of necessity and public policy, and so long as Congress deems it wise not to establish regulations on the subject that would displace any inconsistent regulations of the States covering the same ground. * * *"

We therefore advise you that, in our opinion, Texas Pure Food and Drug Laws will apply to interstate dining cars while they remain in this State.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Jas. D. Smullen_
Jas. D. Smullen
Assistant

JDS:EP

APPROVED
OPINION
COMMITTEE
BY _Blots_
CHAIRMAN